## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JODY CRUZ, MICHELLE ROBICHAUX,
BRETT PLOWFIELD, ALEXIS
VASTARDIS, and ANNA RINALDI,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

    v.

PROGENESIS, INC.,

        Defendant.

Case No. 1:26-mc-98

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## PROGENESIS, INC.'S MOTION TO QUASH SUBPOENA DUCES TECUM
## SERVED ON NON-PARTY MAVEN CLINIC CO.

BECKER GLYNN, MUFFLY, CHASSIN
& HOSINSKI LLP
299 Park Avenue
New York, New York 10171
Tel.: (212) 888-3033

HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, CA 92101
619-236-1551

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 1

        A.      The Underlying Litigation ...................................................................... 1

        B.      The Subpoena to Maven Clinic................................................................ 2

        C.      Meet and Confer Efforts and Procedural History .................................... 3

III.    LEGAL STANDARD............................................................................................ 5

        A.      Motion to Quash or Modify Under Rule 45............................................ 5

        B.      Motion for Protective Order Under Rule 26(c)....................................... 6

IV.     LEGAL ARGUMENT .......................................................................................... 6

        A.      Progenesis Has Standing to Challenge the Subpoena............................ 6

        B.      The Subpoena Should be Quashed or Modified to Protect Progenesis'
                Confidential Commercial Information..................................................... 8

        C.      The Overbreadth and Disproportionality of the Subpoena Support Both
                Quashing Under Rule 45 and Entry of a Protective Order Under Rule
                26(c) ....................................................................................................... 9

                1.      *The Subpoena is Facially Overbroad* ...................................... 10

                2.      *The Temporal Scope is Excessive* ............................................ 11

                3.      *The Subpoena is Not Proportional to the Needs of the Case.*..... 12

        D.      In the Alternative, the Court Should Enter a Protective Order Under Rule
                26(c). ..................................................................................................... 13

V.      CONCLUSION.................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                   <u>Page(s)</u>

*American Federation of Musicians of the United States and Canada v. Skodam Films, LLC*,
    313 F.R.D. 39 (N.D. Tex. 2015) ................................................................... 10

*Arista Records, LLC v. Lime Group LLC*,
    2011 WL 781198 (S.D.N.Y. Mar. 4, 2011) ...................................................... 5

*Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*,
    314 F.R.D. 214 (M.D. La. 2016) .................................................................... 7

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................... 5, 10

*Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*,
    643 F. Supp. 3d 613, (E.D. La. 2022) ........................................................ 7, 13

*FTC v. Exxon Corp.*,
    636 F.2d 1336 (D.C. Cir. 1980) ..................................................................... 8

*Gonzales v. Google, Inc.*,
    234 F.R.D. 674(N.D. Cal. 2006) ................................................................ 7, 9

*HDSherer LLC v. Nat'l Molecular Testing Corp.*,
    292 F.R.D. 305 (D.S.C. 2013) ................................................................. 7, 13

*In re Deutsche Bank Tr. Co. Americas*,
    605 F.3d 1373 (Fed. Cir. 2010)...................................................................... 8

*In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen and*
    *Distributors Union*, 203 F.Supp. 575 (S.D.N.Y. 1961)................................... 11

*In re Interventional Pain Associates, P.A.*,
    510 F.Supp.3d 448 (W.D. Tex. 2021)............................................................ 12

*In re Subpoena Duces Tecum to AOL, LLC*,
    550 F.Supp.2d 606 (E.D. Va. 2008) ............................................................. 11

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ................................................................. 11

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
    2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ............................................... 5

*Nova Prods., Inc. v. Kisma Video, Inc.*,
    220 F.R.D. 238 (S.D.N.Y. 2004) ................................................................... 6

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) .................................................................................. 6, 7, 13

*Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*,
    650 F. Supp. 3d 199 (S.D.N.Y. 2023) .................................................... 6

*Singletary v. Sterling Transp. Co., Inc.*,
    289 F.R.D. 237 (E.D. Va. 2012) ............................................................ 7

*Syposs v. United States*,
    181 F.R.D. 224 (W.D.N.Y. 1998) .......................................................... 8

*Trump v. Vance*,
    480 F.Supp.3d 460 (S.D.N.Y. 2020) ................................................... 11

*U.S. Steel Corp. v. United States*,
    730 F.2d 1465 (Fed. Cir. 1984) .............................................................. 8

*Wiwa v. Royal Dutch Petroleum Co.*,
    392 F.3d 812 (5th Cir. 2004) .................................................................. 5

<u>Rules</u>

Fed. R. Civ. P. 26(b)(1) .................................................................................. 5, 12

Fed. R. Civ. P. 26(c) ..................................................................... 6, 7, 9, 10, 13, 14

Fed. R. Civ. P. 26(c)(1) ...................................................................................... 6, 7

Fed. R. Civ. P. 26(c)(1)(D) .................................................................................. 13

Fed. R. Civ. P. 26(c)(1)(G) .................................................................................. 13

Fed. R. Civ. P. 45(d)(3)(A) ......................................................................... 5, 10, 14

Fed. R. Civ. P. 45(d)(3)(A)(iii) .............................................................................. 5

Fed. R. Civ. P. 45(d)(3)(A)(iv) .............................................................................. 5

Fed. R. Civ. P. 45(d)(3)(B) .......................................................... 6, 8, 10, 13, 14

Fed. R. Civ. P. 45(d)(3)(B)(i) ....................................................................... 6, 7, 8

Fed. R. Civ. P. 45(d)(3)(C)(i) ................................................................................ 8

I.    **INTRODUCTION**

Progenesis, Inc. ("Progenesis") respectfully moves to quash or modify the subpoena duces tecum served on Maven Clinic Co. ("Third Party") (the "Subpoena"), or, in the alternative, for entry of a protective order limiting the scope of any production.  The Subpoena demands eight sweeping categories of documents spanning over a decade, untethered to the narrow consumer fraud claims at issue in the Underlying Action (defined below).  It seeks the entirety of Third Party's relationship with Progenesis, including confidential commercial information such as pricing, contractual terms, and financial arrangements, without regard to whether any of it bears on the specific marketing representations Plaintiffs challenge.  Progenesis attempted to resolve this dispute through the meet-and-confer process, proposing narrowed subpoenas tied to the actual claims.  Plaintiffs declined to engage.  The Court should quash or modify the Subpoena, or, at a minimum, impose the proportionality limitations which Progenesis offered but Plaintiffs refused to accept voluntarily.

II.   **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **The Underlying Litigation**

This Motion arises from a subpoena duces tecum issued to Third Party in connection with a putative class action pending in the United States District Court for the Southern District of California, Case No. 3:24-cv-01789-BJC-AHG (the "Underlying Action").  In that case, five named plaintiffs (collectively, "Plaintiffs") allege that Progenesis made false and misleading statements in marketing its preimplantation genetic testing for aneuploidy ("PGT-A") product to consumers pursuing in vitro fertilization ("IVF").  Nageotte Decl., Ex. A ¶ 1.  The operative complaint asserts claims under the consumer protection statutes of California, Texas, Florida,

Pennsylvania, and Illinois, as well as common-law fraud and unjust enrichment.  *Id*. at ¶¶ 347-478.

The theory of the case is narrow.  Plaintiffs contend that Progenesis marketed its PGT-A testing as 97-98% accurate, as reducing miscarriage risk, as increasing implantation and pregnancy success rates, and as benefitting couples of all ages undergoing IVF.  *Id*. at ¶ 75. Plaintiffs allege these representations were false and misleading, and that they would not have purchased PGT-A testing from Progenesis had they known the truth.  *Id*. at ¶¶ 76, 284.  The claims sound entirely in consumer fraud and deceptive marketing.  *See* S.D. Cal., Case No., 3:24-cv-01789-BJC-AHG, ECF No. 58 (in granting Progenesis' Motion for Judgment on the Pleadings, "the Court finds that all of Plaintiff's claims sound in fraud and applies the heightened pleading standard of Rule 9(b).").  Plaintiffs seek economic losses in the form of the amounts they paid for PGT-A testing and associated costs. Nageotte Decl., Ex. A ¶ 285.

**B.    The Subpoena to Maven Clinic**

Third Party is a digital health platform that administers fertility and family-building benefits programs, including access to in vitro fertilization, egg freezing, surrogacy support, and related reproductive health services.  Plaintiffs served the Subpoena on Third Party demanding the production of documents across eight broad categories spanning over a ten-year period from January 1, 2016, to the present.  Nageotte Decl., ¶ 3, Ex. B at 8-10.

The Subpoena seeks, among other things: all contracts, agreements, memoranda of understanding, or any other arrangements between Third Party and Progenesis (Request Nos. 1-2); all marketing and promotional materials relating to PGT-A, regardless of the source (Request No. 3); all template patient communications, consent forms, counseling materials, and test result reporting templates (Request No. 4); all communications of any kind between the clinic and

Progenesis (Request No. 5); all internal communications and policies relating to PGT-A services (Request No. 6); all documents relating to the scientific validity and clinical utility of PGT-A (Request No. 7); and all patient complaints, concerns, or adverse outcomes associated with PGT-A services from Progenesis (Request No. 8). *Id.*

### C. <u>Meet and Confer Efforts and Procedural History</u>

Plaintiffs served subpoenas duces tecum on seven nonparties (Fertility Specialists of Texas, IVF Laboratory of Central Florida, Main Line Fertility in Pennsylvania, Pinnacle Fertility in Illinois, GenEmbryomics in California, as well as Maven Clinic and Progyny in New York) in connection with the Underlying Action, including the Subpoena at issue here—each subpoena contained similarly broad requests. Because the subpoenas raised overlapping objections, the Parties conducted their meet-and-confer efforts on all seven subpoenas simultaneously. Progenesis has filed or is filing separate motions to quash in each district where compliance is required.

**On December 30, 2025**, Progenesis' counsel sent a detailed meet-and-confer email to Plaintiffs' counsel identifying objections to the Subpoena and the other six third-party subpoenas on grounds of overbreadth, undue burden, irrelevance, and the compelled disclosure of proprietary information. Nageotte Decl. ¶ 4, Ex. C at 4-7. Counsel requested that Plaintiffs either withdraw the Subpoena or substantially narrow it to seek only documents directly relevant to the specific marketing claims at issue, not available from Progenesis through party discovery, and proportional to the needs of the case. *Id.* Counsel also requested that Plaintiffs extend the production deadlines to allow the Parties to complete the meet-and-confer process. *Id.*

**On January 2, 2026**, Progenesis' counsel served its objections to the Subpoena. Nageotte Decl. ¶ 5, Ex. D.

3

**After a follow-up email on January 6, 2026**, the Parties held a telephonic meet and confer on that same date. Nageotte Decl. ¶ 6. During the call, Plaintiffs agreed to extend the production deadline for the Subpoena to February 27, 2026. Nageotte Decl. ¶ 6; *see also* Nageotte Decl. ¶ 4, Ex. C. Defendant also offered to take the lead on drafting proposed limitations to the Subpoena for Plaintiffs' review. Nageotte Decl. ¶ 4, Ex. C at 3.

**On January 12, 2026**, Progenesis' counsel sent Plaintiffs' counsel proposed revised subpoenas for all seven third parties, organized by category (clinics, IVF benefit programs, and GenEmbryomics). Nageotte Decl. ¶ 7, Ex. E; *see also* Nageotte Decl. ¶ 4, Ex. C at 3. The proposed revisions narrowed the subpoenas in four principal ways: (1) reducing the relevant time period from January 1, 2016, to January 1, 2020; (2) introducing a defined term for "Challenged Marketing Claims" tied to the specific representations at issue in this case; (3) eliminating categories with no apparent connection to any claim or defense, such as requests for "all internal communications" and "all policies"; and (4) limiting remaining requests to documents that relate to Challenged Marketing Claims rather than any document that happens to mention PGT-A or Progenesis. *Id.*

Plaintiffs' counsel did not provide substantive comments on the proposed revisions. **On January 20th** and again **on January 22, 2026**, Progenesis' counsel followed up requesting Plaintiffs' response and explaining the key proposed limitations. Nageotte Decl. ¶ 4, Ex. C at 1-2.

**On January 29, 2026**, the Parties held another meet-and-confer conference via telephone, where Plaintiffs declined to engage with the substance of the proposed revisions to the subpoenas, and stated Progenesis would need to file its motion. Nageotte Decl. ¶ 8. The Parties subsequently scheduled an Informal Discovery Conference ("IDC").

**On February 5, 2026**, the Court in the Underlying Action held a discovery conference, where Magistrate Judge Goddard authorized Progenesis to file the instant motion to quash.  S.D. Cal., Case No., 3:24-cv-01789-BJC-AHG, ECF Nos. 76, 77; Nageotte Decl. ¶ 9.

## III.    LEGAL STANDARD

### A.    <u>Motion to Quash or Modify Under Rule 45</u>

Rule 45(d)(3)(A) provides that a court "must quash or modify a subpoena" that, among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). This obligation is mandatory once burden is established. *Id*.  To determine whether a subpoena presents an undue burden, courts consider: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Arista Records, LLC v. Lime Group LLC*, 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011) (courts consider relevance, need, breadth, time period, particularity, and burden); *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at 8 (S.D.N.Y. Dec. 23, 2003) (same).

Discovery from nonparties is subject to the same relevance and proportionality requirements as party discovery under Rule 26(b)(1), however discovery sought from non-parties is subject to stricter scrutiny.  *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (special consideration for non-parties).

Rule 45(d)(3)(B) further provides that a court may quash or modify a subpoena that requires disclosure of "a trade secret or other confidential research, development, or commercial information[.]"  Fed. R. Civ. P. 45(d)(3)(B)(i).

### B.    Motion for Protective Order Under Rule 26(c)

In the alternative, the Court may issue a protective order under Rule 26(c)(1), which authorizes the Court "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).  "To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## IV.    LEGAL ARGUMENT

### A.    Progenesis Has Standing to Challenge the Subpoena.

A threshold question is whether Progenesis, as a party to the underlying action rather than the recipient of the Subpoena, has standing to challenge the subpoena. It does, on two independent grounds.

First, Courts in this District recognize that a party has standing to challenge a third-party subpoena where the party seeks to protect a "personal privilege or right" in the materials sought. *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) (quoting *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004)).  Such rights include proprietary business information, confidential commercial information, and privileged materials.  Rule 45, moreover, expressly requires courts to protect not only the person subject to the subpoena, but also any person "affected by" it.  Fed. R. Civ. P. 45(d)(3)(B).  Courts have recognized that this protection extends to parties whose proprietary

business information is sought through a third-party subpoena.  *See, e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006).

Progenesis has such a personal right here.  The Subpoena seeks Progenesis' contractual terms and pricing, financial arrangements with third parties, proprietary marketing materials, and internal communications.  These categories constitute precisely the type of "confidential research, development, or commercial information" that Rule 45(d)(3)(B)(i) is designed to protect.  Because the Subpoena seeks Progenesis' own confidential commercial information, Progenesis is plainly a person "affected by" the Subpoena and has standing to challenge it.

Second, and independently, Progenesis has standing to seek a protective order under Rule 26(c) regardless of whether it has standing under Rule 45.  Rule 26(c) authorizes the Court, for good cause, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Courts consistently hold that a party may invoke Rule 26(c) to challenge discovery directed to a non-party where that discovery affects the party's interests, even if the party lacks standing under Rule 45.  Fed. R. Civ. P. 26(c)(1).  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*, 643 F. Supp. 3d 613, 618 (E.D. La. 2022); *HDSherer LLC v. Nat'l Molecular Testing Corp.*, 292 F.R.D. 305, 307-8 (D.S.C. 2013); *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012); *Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218–19 (M.D. La. 2016).

Accordingly, even if the Court were to conclude that Progenesis lacks standing to move to quash under Rule 45, it plainly has standing to seek a protective order under Rule 26(c) to prevent disclosure of irrelevant, overbroad, and confidential information.

**B.    The Subpoena Should be Quashed or Modified to Protect Progenesis'
<u>Confidential Commercial Information.</u>**

Independently, the Subpoena should be quashed or modified under Rule 45(d)(3)(B)(i)

because it seeks Progenesis' unneeded but highly confidential commercial information.  Rule 45

expressly authorizes courts to quash or modify a subpoena that requires disclosure of "a trade

secret or other confidential research, development, or commercial information."  Fed. R. Civ. P.

45(d)(3)(B); *see also Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998) (rule 45

allows the Court to quash, modify or condition a subpoena to protect a person affected by the

subpoena from unnecessary or unduly harmful disclosures of confidential information).  These

concerns are especially acute where, as here, the subpoena seeks a party's proprietary

commercial information from a non-party that has no stake in the underlying litigation.  Where

such information is sought, the requesting party must demonstrate a substantial need for the

materials that cannot otherwise be met without undue hardship.  Fed. R. Civ. P. 45(d)(3)(C)(i).

Even if plaintiffs could show substantial need (they cannot), Courts further recognize that

disclosure of highly sensitive commercial information presents a substantial risk of competitive

harm that cannot always be mitigated by a protective order. *See, e.g., In re Deutsche Bank Tr.

Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (recognizing that even rigorous protective

measures may not prevent inadvertent disclosure of sensitive information); *FTC v. Exxon Corp.*,

636 F.2d 1336, 1350 (D.C. Cir. 1980) (noting the difficulty of compartmentalizing confidential

information once disclosed); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467 (Fed. Cir.

1984) (recognizing that certain information is so sensitive that disclosure creates an unavoidable

risk of misuse). Accordingly, courts routinely limit or preclude discovery where disclosure

would expose competitively sensitive business information.

The Subpoena seeks precisely this type of information, including the terms and pricing of Progenesis' contractual agreements with third parties and financial records reflecting payments between the entities. Courts routinely recognize that such information—including pricing, financial data, and business relationships—constitutes proprietary commercial information. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006).

Progenesis' pricing structures, fee arrangements, and contractual terms are competitively sensitive. Disclosure of this information would provide competitors with insight into Progenesis' business strategies, pricing models, and commercial relationships, creating a substantial risk of competitive harm—particularly in the specialized and competitive market for PGT-A testing. Once disclosed, this information cannot be "unlearned," and even the most carefully crafted protective order cannot fully eliminate the risk of misuse.

Plaintiff cannot satisfy Rule 45's heightened standard for disclosure of confidential commercial information. The requested information is not necessary to resolve the claims or defenses in this case. Plaintiffs' claims turn on whether specific marketing representations were false or misleading, not on the commercial terms of Progenesis' business relationships. And, to the extent any relevant information exists, it can be obtained through far less intrusive means. Plaintiff's attempt to obtain Progenesis' proprietary business information through a non-party subpoena is precisely the type of discovery the protections built into Rule 45 are designed to prevent.

Under these circumstances, the Subpoena should be quashed. At a minimum, the Court should modify the Subpoena to exclude categories seeking Progenesis' proprietary financial, pricing, and contractual information.

**C.    The Overbreadth and Disproportionality of the Subpoena Support Both Quashing Under Rule 45 and Entry of a Protective Order Under Rule 26(c).**

9

The Subpoena demands production of eight sweeping categories of documents spanning over a decade, untethered to the specific marketing claims at issue in this case. The scope and breadth of the Subpoena is inseparable from the confidentiality concerns: the wider the net, the more of Progenesis' proprietary information gets swept up. In any event, even to the extent the Court credits this line of authority, the overbreadth and disproportionality of the Subpoena remain squarely relevant to the Rule 26(c) protective order analysis, where Progenesis' standing is beyond dispute. To the extent the Court considers undue burden under Rule 45(d)(3)(A), the governing factors weigh in favor of quashing or modifying. But, even apart from that analysis, the overbreadth and disproportionality of the requests bear directly on the confidential commercial information analysis under Rule 45(d)(3)(B) (because the broader the requests, the more proprietary information is unnecessarily swept in) and on the good cause inquiry under Rule 26(c). The Court should consider these factors under whichever framework it deems appropriate.

### 1.    *The Subpoena is Facially Overbroad*

Courts routinely find subpoenas facially overbroad where, as here, they use sweeping formulations like "all documents" and "all communications" across numerous categories without adequate connection to the claims at issue. *See American Federation of Musicians of the United States and Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 54 (N.D. Tex. 2015) (finding subpoena overbroad where it called for production of "apparently every document" related to the subject matter, "regardless of the documents' direct connection to [the plaintiff]'s claims"); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50-51 (S.D.N.Y. 1996) (quashing subpoena as overbroad where requests for "all documents relating to" defendant's financial

condition and "any communication(s)" would encompass virtually every document in the

nonparty's files for the past ten years). An overbroad subpoena, by definition, imposes an undue

burden. *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 612 (E.D. Va. 2008).

The Subpoena here suffers from the same deficiency. It demands "all" contracts, "all"

financial records, "all" marketing materials, "all" communications, "all" internal policies, and

"all" patient complaints. These categories are not limited to documents bearing on the

Challenged Marketing Claims that form the basis of Plaintiffs' case (i.e., specific representations

about PGT-A accuracy rates, miscarriage risk, pregnancy success rates, and benefits for couples

of all ages). Instead, they reach every document touching on Progenesis or PGT-A testing that

Maven Clinic happens to possess, regardless of any connection to the narrow consumer fraud at

issue.

### 2.    *The Temporal Scope is Excessive*

The Subpoena demands documents from January 1, 2016, to the present, a period

spanning over a decade. Courts have found comparable time periods excessive, particularly

when the requests lack the specificity necessary to justify such breadth. *See Moon v. SCP Pool

Corp.*, 232 F.R.D. 633, 637-638 (C.D. Cal. 2005) (quashing subpoena seeking documents over a

ten-year period as overbroad and unduly burdensome); *Trump v. Vance*, 480 F.Supp.3d 460, 497

(S.D.N.Y. 2020) ("In general, 'as the period of time covered by the subpoena lengthens, the

particularity with which the documents are described must increase.'" (*quoting In re Grand Jury

Subpoena Duces Tecum Addressed to Provision Salesmen and Distributors Union*, 203 F.Supp.

575, 578-579 (S.D.N.Y. 1961))).

Here, the Subpoena runs in the opposite direction. It combines a ten-plus-year time

period with the broadest possible document descriptions (i.e., "all" of everything). The operative

complaint identifies specific marketing representations allegedly made during a defined period. There is no justification for demanding a decade's worth of documents from a nonparty that encompasses the entirety of its relationship with Progenesis.

### 3. The Subpoena is Not Proportional to the Needs of the Case.

Under Rule 26(b)(1), discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  These proportionality requirements apply with equal force to nonparty subpoenas. *In re Interventional Pain Associates, P.A.*, 510 F.Supp.3d 448, 450 (W.D. Tex. 2021) (holding that proportionality requirements of Rule 26 apply equally in the context of Rule 45 motions).

The Underlying Action is a consumer fraud case in which Plaintiffs seek a refund of the amounts they paid for PGT-A testing.  The claims turn on whether specific marketing representations were false or misleading.  Against that backdrop, the Subpoena demands virtually every document in Maven Clinic's files touching on Progenesis or PGT-A, spanning eight broad categories across a ten-year period.  The burden of searching for, reviewing, and producing this volume of material from entities that are strangers to this litigation is plainly disproportionate to what the claims actually require.

Progenesis attempted to address this imbalance through the meet-and-confer process, proposing narrowed subpoenas that would (1) reduce the time period, (2) tie document requests to the specific "Challenged Marketing Claims" at issue, (3) eliminate untethered categories, and (4) limit requests to documents bearing on those claims.  *See* Nageotte Decl. ¶ 4, Ex. C at 1.

12

Plaintiffs declined to engage with these proposals.  Nageotte Decl. ¶ 8.  The Court should impose

the proportionality limits that Plaintiffs refused to accept voluntarily. To the extent the Court

determines that Progenesis may not independently challenge the Subpoena on proportionality

grounds under Rule 45, these same considerations establish good cause for entry of a protective

order under Rule 26(c), and they inform the Court's analysis of whether the Subpoena's breadth

unnecessarily compels disclosure of Progenesis' confidential commercial information under Rule

45(d)(3)(B).

> **D.    In the Alternative, the Court Should Enter a Protective Order
> Under Rule 26(c).**

Even if the Court concludes that the Subpoena should not be quashed in its entirety, it

should issue a protective order under Rule 26(c) limiting the scope of the production to

documents that are directly relevant to the Challenged Marketing Claims at issue in the

Underlying Action.  As noted above, Progenesis has standing to seek a protective order under

Rule 26(c) regardless of the Court's analysis of its standing under Rule 45.  *See Crescent City*,

*supra*, 643 F.Supp.3d at 618; *see also HDSherer*, *supra*, 292 F.R.D. at 307.

Rule 26(c) authorizes the Court to limit discovery to "certain matters" and to require that

confidential commercial information "not be revealed or be revealed only in a specific way[.]"

Fed. R. Civ. P. 26(c)(1)(D), (G).  The Court has wide discretion in fashioning the scope of such

protection.  *Seattle Times*, *supra*, 467 U.S. 20, 36 (1984).

The proposed revised subpoenas Progenesis submitted during the meet-and-confer

process, which Plaintiffs refused to engage with, provide a reasonable framework for any

production.  Those revisions would narrow the time period, tie requests to the specific

Challenged Marketing Claims, and eliminate categories that bear no relationship to the claims at

issue.  *See* Nageotte Decl. ¶ 7, Ex. E.  The Court should adopt those limitations, or comparable ones, as the parameters of any protection that occurs.

## V.    CONCLUSION

For the foregoing reasons, Progenesis respectfully requests that the Court quash or modify the Subpoena under Rule 45(d)(3)(A) and (B), or in the alternative, enter a protective order under Rule 26(c) limiting the scope of any production to documents directly relevant to the Challenged Marketing Claims at issue in the Underlying Action, consistent with the narrowed framework proposed during the meet-and-confer process.

Dated: February 27, 2026
      New York, New York

                                        **BECKER, GLYNN, MUFFLY, CHASSIN &**
                                        **HOSINSKI LLP**

By: * /s/ Jordan E. Stern*
          Jordan E. Stern
          Jesse T. Conan
          Becker, Glynn, Muffly, Chassin & Hosinski
          299 Park Avenue, 16th Floor
          New York, New York 10171
          (212) 888-3033
          jstern@beckerglynn.com
          jconan@beckerglynn.com

          *Attorneys for Defendant Progenesis, Inc.*

          **HIGGS FLETCHER & MACK LLP**

By: * /s/ Kyle Nageotte*
          Kyle W. Nageotte *(pro hac vice pending)*
          William M. Low *(pro hac vice pending)*
          Justin T. Carter *(pro hac vice pending)*
          Higgs Fletcher & Mack LLP
          401 West A Street, Suite 2600
          San Diego, CA 92101
          619-236-1551
          nageottek@higgslaw.com
          wlow@higgslaw.com
          carterj@higgslaw.com

          *Attorneys for Defendant Progenesis, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jordan E. Stern, affirm under penalty of perjury that the foregoing Memorandum of Law in Support of Defendant Progenesis, Inc's Motion to Quash complies with the word-count limit set forth in Local Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as it contains 3741 words (excluding the parts of the brief exempted by Local Rule 7.1), as counted by the word-processing program (Microsoft Word) used to prepare the document.

Dated: New York, New York
       February 27, 2026

                                        */s/ Jordan E. Stern*    
                                        Jordan E. Stern

16